**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

ANDREW COOPER,                          :
                                               Civil Action No. 08-2851 (RMB)
        Petitioner,    :

        v.              :    **OPINION**

U.S. PAROLE COMMISSION,                 :
et al.,
        Respondents.   :

**APPEARANCES:**

Petitioner <u>pro se</u>
Andrew Cooper
F.C.I. Fairton
P.O. Box 420
Fairton, NJ 08320

**BUMB**, District Judge

    Petitioner Andrew Cooper, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] and an application to proceed in forma pauperis

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

pursuant to 28 U.S.C. § 1915(a).  The Respondents are the U.S. Parole Commission and Warden Paul Schultz.

Based on his affidavit of indigence, the Court will grant Petitioner's application to proceed in forma pauperis.  From a review of the record, it is apparent that Petitioner is not entitled to the writ.

## I.  BACKGROUND

Petitioner was convicted in the District of Columbia Superior Court of two counts of assault with a dangerous weapon, possession of a firearm during a crime of violence, and carrying a pistol without a license.  He was sentenced on September 17, 1999, to a term of imprisonment of 25 years.  He became eligible for parole on February 22, 2006.

The offense occurred on or about July 18, 1997. Petitioner's pre-sentence report describes the circumstances of the offense as follows:

> (It should be noted, that the defendant was found guilty of Counts C and D.  The Grand Jury Indictment states, On or about July 18, 1997, within the District of Columbia, Renard Savage-Bey, Andrew Cooper (also known as Tonto), Michael Perry, Larry Field, Carl Fields, and others, unknown to the Grand Jury, assaulted Donny Dalton, Jr., with a dangerous weapon, that is pistols or imitations thereof.  Count D stipulates On July 18, 1997, within the District of Columbia, Renard Savage-Bey, Andrew Cooper (also known as "Tonto"), Michael Perry, Larry Fields, Carl Fields, and others unknown to the Grand Jury assault Ronnell Dennis, with dangerous weapons, that is, pistols or imitations thereof.  The defendant was also found guilty of County G which states: On or about July 18, 1997, within the District of Columbia, Renard Savage-

Bey, Andrew Cooper (also known as "Tonto"), Michael Perry, Larry Fields, Carl Fields, and others unknown to the Grand Jury, did possess firearms, that is, pistols, or imitations thereof, while committing the crime of assault set forth in the third count of this indictment.  The fourth count for which the defendant was convicted states: On or about July 18, 1997, within the District of Columbia, Renard Savage-Bey, Andrew Cooper, also known as "Tonto", Michael Perry, Larry Fields, Carl Fields, and others unknown to the Grand Jury, did carry, opening and concealed on or ab out their person, in a place other than their dwelling place, place of business or on other land possessed by them, pistols, without licenses issued pursuant to law, within 1,000 feet of the real property comprising a public or private daycare center and elementary school and above-mentioned entities, which are, the Humpty Dumpty Child Development Center, the First Baptist Child Development Center and the Petworth Elementary School in the District of Columbia.

...

[The D.C. medical examiner] ruled that the cause of death [of the victim] was multiple gunshot wounds and the manner of death was ruled a homicide.  During the autopsy, it was revealed that the victim suffered from ten gunshot wounds ... .  A witness to the crime, Witness I stated that it was at 8th and Upsur Streets, Northwest and heard a car speed up Taylor Street from Georgia Avenue.  It ran to Taylor Street and observed Renard Savage-Bey, Andrew Leon Cooper, AKA "Tonto", and Mike Perry shooting in the direction of Primo Parker [the victim].  After the shooting, Witness I saw Renard, Andrew and others leave the scene in a black vehicle, which it recognized as belonging to Mike Perry.  Mike Perry fled the scene in a burgundy vehicle.  Witness I stated that it had known Renard, Andrew, and Mike Perry for more than five years.  Witness I went to the location where Renard, Andrew and Mike were shooting and found Primo Parker suffering from multiple gunshot wounds.  Witness I noted that Primo Parker was the gunshot victim, as a result of this episode.  Another witness, Witness 5, stated it was in the 700 block of Taylor Street when it observed a group of black males armed with pistols, run toward another group of black males who were in the 700 block of Taylor Street.  Witness 5 then heard rapid gunfire

>     and clearly observed one of the subjects shoot the
> decedent, Primo Parker.  The subjects then fled
> eastbound on foot in the 700 block of Taylor Street.
> These armed subjects were on Taylor Street, running
> toward Seventh Street, where the black and burgundy
> vehicles were parked.  Witness 5 was shown a group of
> similar MPDC photographs.  It positively identified the
> photograph bearing PDID Number 462-049, that of Renard
> Savage-Bey, as one of the armed subjects it observed
> shoot at the decedent, Primo Parker.  Witness 2, who
> was standing on Taylor Street, heard these individuals
> say they were coming back and whoever was outside was
> going to die.  Witness 3 then stated that approximately
> thirty minutes later, it heard gunshot sounds from the
> area of Seventh and Taylor Streets, Northwest, and that
> it went to the area and observed Primo Parker lying on
> the ground suffering from multiple gunshot wounds.
>
>     ...
>
>     A group of similar photographs were displayed to
> Witnesses 2 and 3, who positively identified the
> photograph, bearing PDID # 450-401, that of Andrew Leon
> Cooper, as one of the subjects who engaged in the
> altercation before the shooting. ...
>
>     Another witness, 4, stated that it was in the area
> of Seventh and Taylor Street, when it noticed a group
> of people begin to run into the alley.  Witness 4 then
> noticed three subjects armed with gun were chasing the
> group.  Witness 4 then observed all three subjects
> shooting their guns in the 700 block of Taylor Street.
> Witness 4 then saw the subjects enter a black or a dark
> burgundy 1980s model car that sped away from the area.

(Pre-sentence Report at 4.)[2]

The U.S. Parole Commission conducted Petitioner's initial parole hearing on August 2, 2005, at which time Petitioner had

---

[2] Because it and certain exhibits refer to the confidential Pre-Sentence Report ("PSR"), the Answer and exhibits have been filed under seal.  This Court has determined that any information from the PSR recited in this Opinion is relevant and appropriate for inclusion.

4

served 93 months.  At that hearing, the Commission computed the parole guideline range based upon a Salient Factor Score of 3 and a Base Point Score of 8.  The Base Point Score was calculated as follows:

```
    Category I - Risk of Recidivism (Salient Factor Score) ... 3
        SFS         Risk Category        Points
        10-8        Very Good Risk         +0
         7-6        Good Risk              +1
         5-4        Fair Risk              +2
         3-0        Poor Risk              +3
```

   Category II - Current or Prior Violence ................. 2
       Note: Use the highest applicable subcategory

       Violence in current offense and any felony
       violence in two or more prior offenses      +4

       Violence in current offense and any felony
       violence in one prior offense               +3

       <u>Violence in current offense                 +2</u>

       No violence in current offense and any felony
       violence in two or more prior offenses      +2

       Possession of firearm in current offense if
       current offense is not scored as a crime of
       violence                                    +2

       No violence in current offense and any felony
       violence in one prior offense               +1

       None of the above                           +0

   Category III - Death a Victim or High Level Violence
              (Type of Risk)............................3
       Note: Use the highest applicable subcategory.

       <u>Current offense involved violence (high level or
       other violence) with death of victim resulting  +3</u>

       Current offense involved attempted murder, murder
       conspiracy/solicitation, or violence in which

5

>     death of the victim would have been the probable
>     result                                                    +2
>
>     Current offense was high level violence (other
>     than behaviors described above)                           +1
>
>     None of the above                                         +0

   Base Point Score (Total of Categories I through III).......8
(2.80 Guideline Worksheet - Base Point Score.)

   Under the Commission's rules, a Base Point Score of 8 points yields a Base Point Score Guideline Range of 72-96 months, to be added to the 100-100 months required by the sentence structure to be served prior to parole eligibility date.  The Commission assessed an additional 0-4 months for disciplinary infractions, yielding a total Guideline Range, for Petitioner, of 172-200 months.  28 C.F.R. § 2.80.

   The Commission denied parole and ordered that Petitioner serve 60 months to a reconsideration hearing in August 2010, by which time Petitioner will have served 153 months.  The Commission's decision was not appealable.

   Here, Petitioner challenges the calculation of his Base Point Score.  Petitioner contends that the Commission went outside of the guidelines when it assessed him 3 points under Category III (Death of a victim or high level violence).  Petitioner contends that he was scored for a murder for which he was acquitted.  Instead, Petitioner contends that he should have received a score of 0 under Category III, and that his Base Point

Score should have been a total of 5, which would make him eligible for parole sooner.

## II.   ANALYSIS

A federal court's review of a Commission decision is limited.  See Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  See also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission.").  "The appropriate standard of review of the Commission's findings of fact 'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'"  Id. (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)).  In addition, the review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'"  Id. (quoting Zannino, 531 F.2d at 690).

The Commission uses guidelines promulgated under the authority of Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33 (eff. August 5, 1998), to determine how long a D.C. Code offender should be incarcerated.  See also D.C. Code § 24-404 ("Whenever

it shall appear to the [Commission] that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the [Commission] may authorize his release on parole upon such terms and conditions as the [Commission] shall from time to time prescribe.").

An inmate's total score is calculated by adding points in the following categories: salient factor; current or prior violence; and death of victim or high level of violence. 28 C.F.R. § 2.80(f).

> Salient factor points reflect the inmate's perceived risk of recidivism and are awarded based on his age at the time of the offense and the number and nature of his previous offenses. 28 C.F.R § 2.20. Violence points reflect the use of violence or a firearm in the current offense or in previous offenses. § 2.80(f). Death-of-victim points reflect murder and other specifically enumerated crimes involving a "high level" of violence, even if the victim survived. Id. After adding these points together, the inmate's base guideline range is calculated in months. § 2.80(h). This range may then be adjusted upward for disciplinary infractions while incarcerated, § 2.80(j), or downward for "superior program achievement," § 2.80(k).

Brown v. Williamson, 2009 WL 205626, *2 (3d Cir. 2009).

The Commission's regulations define "current offense" as any criminal behavior that is either reflected in the offense of conviction or that "[i]s not reflected in the offense of conviction but is found by the Commission to be related to the

8

offense of conviction (i.e., part of the same course of conduct as the offense of conviction)." 28 C.F.R. § 2.80(g)(6). The regulations further state that Category IIIA (i.e., current offense involved violence with death of victim resulting) applies if the death of a victim is caused by the offender, or caused by an accomplice and the killing was caused by an accomplice and the killing was planned or approved by the offender in furtherance of a joint criminal venture. 28 C.F.R. § 2.80(g)(8).

Information in the Pre-Sentence Report provides a rational basis for the Commission's conclusion that Category IIIA applies to Petitioner's criminal conduct. Although Petitioner was not convicted of the murder of the victim, Primo Parker, he was convicted of other violent crimes with his co-defendants on the same day of the murder, two witnesses identified Petitioner has having been involved in the altercation before the murder, and another witness identified Petitioner as having been involved in the shooting which resulted in Mr. Parker's death. At best, Petitioner can point to conflicting evidence as to his involvement in the murder. In the face of conflicting evidence, including conflicting statements by Witness I, the Commission may rely upon the summary contained in the Pre-Sentence Report. Cf. Arias v. U.S. Parole Commission, 648 F.2d 196, 199-200 (3d Cir. 1981) (upholding, with respect to federal prisoner, Commission's right to consider information in pre-sentence report regarding

9

dismissed indictment). Cf. also Graves v. Holt, 303 Fed.Appx. 121, 124-125, (3d Cir. 2008) (it is not irrational for Commission to discount recantations).

Petitioner is not entitled to relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.[3] A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claim. No certificate of appealability shall issue.

---

[3] As a District of Columbia prisoner, Petitioner needs a certificate of appealability to proceed on appeal. See Graves v. Holt, 303 Fed.Appx. 121, 123 (3d Cir. 2008); Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1309 (D.C.Cir.), cert. denied, 537 U.S. 1004 (2002) (D.C. prisoner is state prisoner for purposes of federal habeas corpus statute).

IV. CONCLUSION

For the reasons set forth above, the Petition will be denied. No certificate of appealability shall issue. An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: June 1, 2009